## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MCKENNA CONNOLLY, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff,*<br><br>v.<br><br>THE VAIL CORPORATION d/b/a Vail Resorts Management Company, a Colorado Corporation<br><br>*Defendant*. | Case No.:<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff McKenna Connolly ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant The Vail Corporation d/b/a Vail Resorts Management Company, a Colorado Corporation ("Defendant" or "Vail"), for its negligent, reckless, and/or intentional practice of effectively canceling Plaintiff's and Class Members' ski and snowboard passes without issuing any refund.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (defined below), including relief requiring Defendant to refund Plaintiff and Class Members for the unused portions of their passes.  Plaintiff alleges the following upon personal knowledge as well as investigation by their counsel and as to all other matters, upon information and belief.

### NATURE OF THE CASE

1.     This is a nationwide class action brought by Plaintiff on behalf of herself and all Class Members who purchased an Epic Pass.[1]

---

[1] Epic Pass is defined as any of the following season passes for the 2019-2020 season that have unused days remaining after March 15, 2020: season passes to any of Defendant's resorts, Epic Passes, Local Epic Passes, Regional Epic Passes, "Specialty" Passes, and Epic Day Passes (collectively, "Epic Passes").

2.      Defendant sells hundreds of thousands of their popular Epic Passes throughout the country, many of which cost hundreds of dollars or as much as a thousand dollars.[2]  In March of 2020 and in the face of the spreading COVID-19 pandemic, Defendant initially suspended operations at all of its ski areas in North America from March 15, 2020 until March 22, 2020. Defendant stated that it would refund all lift tickets that were valid for March 15-22, 2020; however, Defendant refused to provide refunds of any portion of the monies passholders paid to purchase Epic Passes.  On March 17, 2020, Defendant stated that it would close all of it ski areas in North America beginning March 20, 2020.

3.      Unfortunately for Plaintiff and Class Members, Defendant refused to refund to customers any of the monies paid for the Epic Passes, including the portion of the Epic Passes that Plaintiff and Class Members are no longer able to use.  By Defendant's failure to refund the unused portions of its Epic Passes, Defendant has shifted its financial burden caused by COVID-19 to its customers— consumers who are even more vulnerable and need whatever resources are available to provide for themselves and their families.

4.      On April 27, 2020, Defendant announced for the first time that it would issue credits— varying in amount based on the type of pass and the usage prior to the shutdowns— to impacted 2019-2020 passholders.[3]  However, those credits may only be applied toward the purchase of new passes for the 2020-2021 season and Defendant continues to refuse to offer refunds of any kind for the Epic Passes for the 2019-2020 season.

5.      Not only is Defendant's conduct immoral and unfair— it is illegal.  Defendant's

---

[2] *See* Scott Miller, *Vail Resorts has Sold about 925,000 passes of all kinds for 2018-19 Season,* VAIL DAILY NEWS (Dec. 8, 2018), *available at:* https://www.skyhinews.com/news/vail-resorts-has-sold-about-925000-passes-of-all-kinds-for-2018-19-ski-season/ (last accessed June 24, 2020).
[3] *Vail Announces 19/20 Pass Holder Credits and 'Epic Coverage' for 20/21 Season*, VAIL RESORTS (Apr. 27, 2020), *available at:* http://news.vailresorts.com/corporate/vailresorts/vail-resorts-announces-1920-pass-holder-credits-and-epic-coverage-for-2021-season.htm (last accessed June 24, 2020).

sale of its Epic Passes to consumers and failure to issue any refund despite the passes being effectively canceled gives rise to Plaintiff's and Class Members' claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing to consumers, conversion, breach of warranty, and violations of the Colorado Consumer Protection Act. Plaintiff seeks for herself and Class Members monetary and injunctive relief compensating consumers on a pro-rata basis for the unused portions of their Epic Passes.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply. This Court has supplemental jurisdiction over the related state-law claims under 28 U.S.C. §1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, because many of the acts and transactions giving rise to this action occurred in this district, Defendant conducts substantial business in this district, Defendant is headquartered in this district, Defendant is subject to personal jurisdiction in this district, and Defendant has intentionally availed themselves of the laws and markets of this district.

## PARTIES

8.      Plaintiff McKenna Connolly is, and at all times relevant hereto has been, a citizen of the state of Colorado, Boulder County. Plaintiff Connolly purchased the Epic Local Pass on October 12, 2019 for $719.00. Plaintiff Connolly's Epic Pass was for the 2019-2020 ski season, granting her unlimited access to Defendant's ski areas. Plaintiff Connolly purchased her Epic Pass

because it provided access to a wide variety of locations over the entire 2019 and 2020 seasons. Prior to the suspension and closure of Defendant's ski areas, Plaintiff was able to use her pass once during the 2019-2020 season but was unable to use her Epic Pass after March 15, 2020.  Despite Plaintiff Connolly's repeated requests for a refund of the purchase price paid for her Epic Pass, Defendant has not refunded her the unused portion of her pass after they closed all of their ski areas, rendering the pass unusable.  Instead, Defendant has offered Plaintiff a credit applied towards a season pass for the 2020 and 2021 seasons, which season pass Plaintiff has no desire or ability to purchase.  Had Plaintiff Connolly known that she would not have been able to use her pass throughout the 2019 and 2020 seasons, she would not have purchased her Epic Pass.

9.      Defendant the Vail Corporation d/b/a Vail Resorts Management Company is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business located at 390 Interlocken Crescent, Broomfield, Colorado 80021.  Defendant operates thirty-seven "mountain ski resorts and urban ski areas" (collectively, "ski areas") across the world, the majority of which are located in the United States. In the United States, Defendant owns and operates ski areas in Colorado, Utah, California, Nevada, Vermont, New York, New Hampshire, Washington, Pennsylvania, Ohio, Missouri, Wisconsin, Minnesota, Michigan, and Indiana. Internationally, Defendant owns and operates resorts in Canada, Australia, Japan, Switzerland, Italy, and France.

## FACTUAL ALLEGATIONS

**Defendant's Obligations and its Epic Passes**

10.      Defendant sells a variety of different passes which obligate it to provide various forms of access to a number of ski and snowboard resorts for the 2019-2020 ski and snowboard seasons.  The Epic Passes sold by Defendant that are at issue in this complaint are:

a.  The Epic Pass, which provides passholders with unlimited access to most of Defendant's ski areas, and limited access to the remainder of Defendant's ski areas. Defendant advertises that Epic Passes provide "Unlimited, Unrestricted Skiing at our Best Resorts," "Unlimited, unrestricted skiing or riding," have "no restricted dates," and Epic Passes are "without limits;"[4]

b.  The Epic Local Pass, which provides passholders "unlimited, unrestricted access" to many of Defendant's ski areas, and limited access—either a limited number of days or holiday-restricted access—to the remainder of Defendant's ski areas;[5]

c.  Regional Epic Passes, which provide passholders "unlimited, unrestricted access" to the specific ski area(s), including the Summit Value Pass, Keystone Plus Pass, Tahoe Local Pass, Tahoe Value Pass, Kirkwood Pass, Northeast Value Pass, Northeast Midweek Pass, Afton Alps Pass, Mt. Brighton Pass, Wilmot Pass, Ohio Pass, Paoli Peaks Pass, Snow Creek Pass, and Hidden Valley Pass.[6]  Defendant's regional passes may be limited to specific ski areas or particular days of the week, but otherwise provide access to ski areas for the entire 2019-20 season;

d.  "Specialty" passes for specific groups of people, including the Military Pass Active, Military Pass Active Dependent, Military Pass Retired, Military Pass Retired Dependent, Military Pass Veteran, Military Pass Veteran Dependent,

---

[4] *Epic Season Pass*, Epic Pass, *available at:* https://www.epicpass.com/passes/epic-pass.aspx (last accessed June 24, 2020).
[5] *Epic Local Pass*, Epic Pass, *available at:* https://www.epicpass.com/passes/epic-local-pass.aspx (last accessed June 24, 2020).
[6] *See e.g., Kirkwood Pass*, Epic Pass, *available at:* https://www.epicpass.com/Passes/Kirkwood-Pass.aspx (last accessed June 24, 2020).

Liberty Pass, Liberty Pass Dependent, Local College Pass, Summit Value College Pass, Park City Youth Pass, Tahoe Local College Pass, Tahoe Value College Pass, Kirkwood College Pass, Afton Alps College Pass, Afton Alps College Night Pass, Mt. Brighton College Pass, and Mt. Brighton College Night Pass.  Defendant's "specialty" passes may be limited to particular ski areas or to certain days of the week, but otherwise provide access to the ski areas for the entire 2019-20 season;

e.  Epic Day Passes, which provide passholders between one and seven days of access to the majority of Defendant's ski areas. Multi-day Epic Day Passes are not required to be used on consecutive days or at the same ski area;[7] and

f.  Any other season passes that permit purchasers unlimited access to a single ski area for the entire season.

11.  Defendant sells these passes at its resorts and ski areas, or from its websites, such as www.snow.com and www.epicpass.com.  When Plaintiff purchased the Epic Local Pass, she formed a contract with Defendant The Vail Corporation d/b/a Vail Resorts Management Company. Specifically, Defendant operated under the business name Vail Resorts Management Company; when individuals purchased Epic Passes they formed a contract with Defendant, and the Terms of Use on epicpass.com indicate that "The Vail Corporation and its affiliates ("Vail Resorts", "we", "us", or "our") provide these websites."[8] The Terms & Conditions for all Defendant's websites provide that the use of the website(s) is governed by the laws of the State of Colorado, and any legal proceedings against Defendant shall be commenced in state or federal court in Denver,

---

[7] *Epic Day Pass*, EPIC PASS, *available at:* https://www.epicpass.com/passes/epic-day-pass.aspx?days=7 (last accessed June 24, 2020).
[8] *Terms and Conditions*, EPIC PASS, *available at:* https://www.epicpass.com/footer/terms-and-conditions.aspx (last accessed June 24, 2020).

6

Colorado.

12.     Defendant permitted consumers to purchase a 2019-20 Season Epic Pass or Epic Day Pass by making an initial payment of $49. The remaining balance for the pass was then charged to the purchaser's credit card. Defendant's Epic Pass website states that, by making the $49 initial payment, the purchaser is "committing to buy the Pass(es)" and that once the purchaser makes the $49 initial payment neither the initial payment nor the pass purchase can be canceled or refunded.[9] Defendant sells its Epic Pass for approximately $979; its Epic Local Pass for approximately $729; its Epic 1-to-7 Day Passes for between approximately $129 and $766; its Summit Value Pass for approximately $589; its Keystone Plus Pass and Park City Youth Pass for approximately $389; its Tahoe Local Pass and Kirkwood Pass for approximately $619; its Tahoe Value pass for approximately $529; its Northeast Value Pass for approximately $599; its Northeast Midweek Pass for approximately $449; its Afton Alps Pass for approximately $479; its Mt. Brighton Pass for approximately $539; its Wilmot Pass for approximately $429; its Epic Military Pass Active and Epic Military Pass Active Dependent for approximately $169; its Epic Military Pass Veteran for approximately $559; its Ohio Pass for approximately $349; its Paoli Peaks Pass and Snow Creek Pass for approximately $319; and its Hidden Valley Pass for approximately $379.[10]

13.     Plaintiff and Class Members purchase these Epic Passes specifically because they provide wide access to an array of Defendant's ski resorts and because the Epic Passes provide frequent, flexible, and sustained use of the resorts for most of the year and for the entire ski and snowboard season.  Each ski and snowboard season typically begins in October and can last

---

[9] *See Deposit and Cancellation Policy*, EPIC PASS, *available at:* https://www.epicpass.com/info/deposit-and-cancellation-policy.aspx (last accessed June 24, 2020).
[10] *2020/21 Season Passes*, EPIC PASS, *available at:* https://www.epicpass.com/pass-results/passes.aspx (last accessed June 24, 2020).

through June.  Plaintiff and Class Members benefit from the Epic Passes because they receive a discount for the increased and usually unlimited access to the ski areas when compared to having to buy individual lift tickets each time they visit a ski area.

14.     Plaintiff's and Class Members' expectations and benefits in purchasing their Epic Passes were effectively the same regardless of which of the Epic Passes they purchased, and all have been treated similarly by Defendant and have suffered the same type of harm from Defendant's actions—the inability to use their expensive ski passes as promised.

**Defendant's COVID-19 Shutdown**

15.     On March 11, 2020, the World Health Organization reclassified COVID-19 as a worldwide pandemic and, two days later, the President declared a "National Emergency."

16.     On March 11, 2020, in response to the COVID-19 pandemic, Jared Polis, Governor of Colorado, issued Executive Order D 2020 003, which declared COVID-19 a disaster emergency.  On March 14, 2020, Governor Polis issued Executive Order D 2020 004, which directed all downhill ski resorts in the State of Colorado to suspend operations from March 15-22, 2020.  On March 18, 2020, Governor Polis issued Executive Order D 2020 006, which ordered all downhill ski resorts to suspend operations from March 23-April 6, 2020, which was later extended to April 30, 2020.  On March 25, 2020, Governor Polis issued Executive Order D 2020 017, which ordered all residents of Colorado to stay at home.  Spread of the disease has reportedly been linked to ski resorts around the country, including those in Colorado.

17.     As a result of this COVID-19 pandemic, on or about March 15, 2020, Defendant suspended operation at all of its ski areas in North America until March 22, 2020.  Defendant stated that it would refund all lift tickets that were valid for March 15-22, 2020.  However,

Defendant refused to provide refunds of any portion of the monies passholders paid to purchase an Epic Pass.

18.    On March 17, 2020, Defendant stated that it would close all of its ski areas in North America beginning March 20, 2020. Again, Defendant refused to provide refunds for any Epic Pass.

19.    On April 27, 2020, Defendant announced for the first time that it would issue credits— varying in amount based on the type of pass and the usage prior to the shutdowns— to impacted 2019-2020 passholders.[11]   However, those credits may only be applied toward the purchase of new passes for the 2020-2021 season and Defendant continues to refuse to offer refunds of any kind for the Epic Pass for the 2019-2020 season. The credit is woefully insufficient to compensate Plaintiff because it is only a fraction of the unused value on her Epic Pass, because it is a credit rather than cash, and because receipt of the credit requires advancing another large sum of payment to Defendant, which sum Plaintiff is unwilling to advance.

20.    Simultaneously with its refusal to issue any refund for the unused portions of the Epic Passes, Defendant has refused access to or use of their shuttered ski areas for the duration of the 2019-2020 season.

21.    Defendant also offers Pass Insurance for the Epic Passes.  Passholders who purchase Pass Insurance will receive a refund of the cost of the Epic Pass, but only for certain covered events.  The covered events are limited to the following: (a) injury or sickness of the insured (passholder); (b) injury, sickness, or death of a family member of the insured; (c) if the insured is subpoenaed, required to serve on a jury, hijacked, or quarantined; (d) if the insured is

---

[11] *Vail Announces 19/20 Pass Holder Credits and 'Epic Coverage' for 20/21 Season*, VAIL RESORTS (Apr. 27, 2020), *available at:* http://news.vailresorts.com/corporate/vailresorts/vail-resorts-announces-1920-pass-holder-credits-and-epic-coverage-for-2021-season.html (last accessed June 24, 2020).

involuntarily laid off, terminated, or transferred; (e) if the insured is called for active military service or had military leave canceled; (f) if the insured has a pregnancy or childbirth; or (g) if the insured is a student and transfers schools. The Epic Pass website provides that, unless the passholder purchases Pass Insurance, the purchaser "will not be eligible for a refund of any kind" for the season or Epic Pass.[12]

22.     Because Defendant refused to provide refunds for individuals who purchased an Epic Pass with unused days, many consumers made claims on their Pass Insurance, seeking a refund due to the closure of Defendant's ski areas. Passholders' claims under the Pass Insurance have consistently been denied.[13]

23.     All of this this underscores the inherent wrongfulness of Defendant's efforts to escape liability for loss or damage caused by its closure of its ski areas, preventing Plaintiff and Class Members from being able to use the Epic Passes, without providing any refund whatsoever for the unused portion of the passes.  Any attempt by Defendant to limit or disclaim liability for preventing passholders from using the Epic Passes, while retaining the fees that passholders paid to purchase the Epic Passes, is unconscionable and unenforceable, and unjustly enriches Defendant.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action individually and on behalf of the following Classes pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, defined as follows:

    All persons in the United States who purchased any 2019-20 Epic Passes that had

---

[12] *See Epic Season Pass*, *supra*, footnote 1.
[13] *See e.g.*, Epic Pass Facebook, FACEBOOK, *available at:* https://www.facebook.com/pg/epicpass/posts/ (Apr. 8, 2020, 8:50 A.M.) (comment stating that claim for a refund under the Pass Insurance was denied); *id.* (Apr. 8, 2020, 6:55 A.M.) (same); Joyce and Doug Paff, *Letter: So Much for Epic Pass Insurance*, VAIL DAILY (Apr. 17, 2020), *available at:* https://www.vaildaily.com/opinion/letter-so-much-for-epic-pass-insurance.

unused days after March 15, 2020.

25.     Excluded from the Classes are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

26.     This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

27.     The members of the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Class in a single action will provide substantial benefits to the parties and Court.

28.     Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

      a.   Whether Defendant is required to provide partial refunds to Plaintiff and Class members who purchased Epic Passes;

      b.   Whether Defendant breached its contracts with Plaintiff and Class members;

      c.   Whether Defendant was unjustly enriched by its conduct;

      d.   Whether Defendant breached its implied and express warranties; and

      e.   Whether Defendant violated the Colorado Consumer Fraud Act.

29.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Individual questions, if any, are not prevalent in comparison to the numerous questions that dominate this action.

30.     Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

31.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

32.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

33.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

34.     As a result of the foregoing, class treatment is appropriate.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**
**Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**

35.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

36.     Plaintiff and the Class entered into a contract with Defendant when purchasing Epic Passes.

37.     The contract was offered by Defendant and was formed at the time Plaintiff and the Class accepted it by purchasing their 2019-20 Epic Pass.

38.     Plaintiff and the Class performed their obligations under the contract by providing payment in consideration for the 2019-20 Epic Pass.

39.     Defendant breached its contracts with Plaintiff and the Class by retaining the consideration received by Plaintiff and the Class while closing their ski resorts, making the 2019-20 Epic Passes useless for a substantial portion of the ski season.

40.     Defendant's decision to retain the fees paid by Plaintiff and the Class without

12

providing them with what was promised deprived Plaintiff and the Class of the benefit of their bargain.

41.     Due to the closure of Defendant's ski areas for a substantial portion of the 2019-20 season, Defendant is unable to perform the remainder of the contract.  Defendant's closure of all of its ski areas for the remainder of the 2019-20 ski season, while a substantial portion of the ski season remained, renders Defendant's representations that it will not provide refunds for 2019-20 Epic Passes illusory and void.

42.     For all of these reasons, Defendant acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class Members the benefit of the bargain originally intended by the parties, thereby constituting a breach of their implied covenant of good faith and fair dealing, which is implied into every contract in Colorado.

43.     As a direct and proximate result of Defendant's breaches of its contract and of its implied covenants, Plaintiff and the Class have suffered monetary damages.

44.     Plaintiff and the Class seek the return of amounts paid to Defendant for their 2019-20 Epic Passes, as well as attorneys' fees, costs, and interest.

## COUNT II
### Conversion

45.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

46.     Plaintiff and the Class purchased Epic Passes that granted them the right to services that were promised in exchange for the purchase price of the passes.

47.     Defendant intentionally interfered with Plaintiff's and the Class' rights granted through those passes when Defendant closed all of its ski areas and retained the purchase price of the passes.

48.     Defendant exercised control over Plaintiff's and Class members' property by closing its ski areas and refusing to issue partial refunds for the unusable portion of the 2019-20 Epic Passes, and the rights granted by those passes.

49.     Defendant's closure of its ski areas and refusal to refund the unusable portion of the 2019-20 Epic Passes to Plaintiff and Class members is unauthorized.

50.     Plaintiff and Class members have, through the filing of this lawsuit or otherwise communicating with Defendant, demanded that Defendant issue refunds for the unusable portion of the 2019-20 Epic Passes.

51.     Defendant has uniformly and consistently refused to issue refunds for the unusable portion of the 2019-20 Epic Passes.

52.     Plaintiff and the Class seek a partial return of the price paid to Defendant for their 2019-20 Epic Passes.

## COUNT III
### Breach of Warranty

53.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.     Defendant created an express warranty through their advertising statements that the Epic Passes would provide unlimited, unrestricted access to its resorts through the 2019-2020 season.

55.     This warranty became part of the basis of the bargain between Plaintiff and the Class and Defendant. Plaintiff and the Class relied on this warranty in deciding to purchase a pass from Defendant.

56.     Defendant breached this warranty by failing to provide unlimited access to its ski areas throughout the 2020 ski season and by failing to issue partial refunds to Plaintiff and the Class after shutting down access to its facilities.

57.     Plaintiff and the Class would not have purchased the Epic Passes, or would have paid substantially less, had Defendant disclosed that it would not honor the warranty and not refund Plaintiff and Class members any portion of the purchase price paid for the passes.

58.     Plaintiff and the Class performed their obligations under the warranty, including paying in full for their passes.

59.     Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach of warranty.

## COUNT IV
### Violations of the Colorado Consumer Protection Act

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes "advertis[ing] goods, services, or property with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(g), (i).

62.     Defendant is a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

63.     In the course of Defendant's business, it advertised that the purchasers of its Epic Passes would have unlimited access to skiing and snowboarding until the end of the 2019-20 season, which typically lasts until May or June. Defendant knew, however, that if it closed all of its resorts before the end of June 2020 that it would retain 100% of the revenue generated from sales of the passes.

64.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

65.     Defendant's unfair practices significantly impacted the public as actual or potential consumers of Defendant's goods, services, or property.

66.     Defendant's actions proximately caused injuries to Plaintiff and Class members.

67.     Plaintiff and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their passes, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to their ability to access Defendant's ski areas without restriction. Had Plaintiff and the other Class members known this, they would not have purchased their passes and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their passes and did not receive the benefit of their bargain.

68.     Plaintiff does not seek certification under Federal Rule of Civil Procedure 23(b)(3) for Defendant's violation of the CCPA, instead Plaintiff seeks certification under Rule 23(b)(2)— seeking declaratory relief—and Rule 23(c)(4) regarding the issue of whether Defendant's conduct alleged herein violates the CCPA.

69.     Plaintiff's and the Class Members' injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

## COUNT V
### Unjust Enrichment
### (In the Alternative to Count I)

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     Plaintiff and the Class conferred a direct benefit on Defendant by purchasing 2019-20 Epic Passes.

72.     Defendant knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the Class.

73.     Defendant's retention of these benefits is unjust and inequitable under the circumstances.

74.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to recover the amount each paid to Defendant for their 2019-20 Epic passes, as well as attorneys' fees, costs, and interest.

75.     Plaintiffs and the Class Members demand a jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.     An order awarding actual damages to Plaintiff and the Class and returning to Plaintiff and the Class the portion of each Epic Pass that was unused;

C.     An injunctive order compelling Defendant to issue refunds for the unused portion of any Epic Pass to any member of the Class who requests such a refund;

D.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

E.     An order requiring Defendant to pay restitution to restore all funds acquired by

means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business

act or practice, or a violation of Colorado law, plus pre- and post-judgement interest thereon;

F.      An order requiring Defendant to disgorge or return all monies, revenues, and profits

obtained by means of any wrongful or unlawful act or practice;

G.      An order requiring Defendant to pay all actual and statutory damages permitted

under the counts alleged herein;

H.      An order requiring Defendant to pay punitive damages on any count so allowable;

I.      An order awarding attorney fees and costs, including the costs or pre-suit

investigation, to Plaintiff and the Classes; and

J.      An order for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury of her peers on all issues so triable.

Respectfully submitted,

Dated:  June 25, 2020            By: */s/ Nicholas R. Lange*
                                 Katrina Carroll
                                 kcarroll@carlsonlynch.com
                                 Nicholas R. Lange
                                 nlange@carlsonlynch.com
                                 **CARLSON LYNCH LLP**
                                 111 West Washington Street, Suite 1240
                                 Chicago, Illinois 60602
                                 Telephone: (312) 750-1265

*Counsel for Plaintiff and the Putative Class*